**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**

Civil Action

**JOHN DOE**,

     *Plaintiff*,

v.

**MARK KEEL**, in his official capacity as Chief of South Carolina Law Enforcement Division,

**SOUTH CAROLINA LAW ENFORCEMENT DIVISION ("SLED")**,

     *Defendants.*

C/A: 3:20-cv-02755-MGL

---

### COMPLAINT AND JURY DEMAND

---

JOHN DOE, by and through his attorneys Allen Chaney, of SOUTH CAROLINA JUSTICE PROJECT, and Susan Dunn and Shirene Hansotia, of the AMERICAN CIVIL LIBERTIES UNION OF SOUTH CAROLINA, respectfully brings forth this Complaint and Jury Demand:

### PRELIMINARY STATEMENT

Plaintiff John Doe does not live in South Carolina, has not committed a crime in South Carolina, and is under no obligation to register as a sex offender in South Carolina. Put plainly, Plaintiff John Doe is a **not** a sex offender under South Carolina law. Despite this, Defendant South Carolina Law Enforcement Division ("SLED"), under

[1]

the direction of Defendant Mark Keel, continues to publish Plaintiff's name, picture, out-of-state conviction, and last-known out-of-state address on their online sex offender registry. This conduct needlessly and unjustifiably causes Plaintiff severe reputational harm, hinders his ability to find work and housing, and limits his right to travel and parent. By persisting in publishing false and injurious statements about Plaintiff—namely, that he is a sex offender, that he is dangerous, and that he is being tracked by law enforcement—SLED has also committed actionable defamation under South Carolina law.

The purpose of the South Carolina Sex Offender Registration Act ("the Act") is to "promote the state's fundamental right to provide for the … safety of its citizens," while respecting the "guaranteed constitutional rights of those who have violated our nation's laws." S.C. Code § 23-3-400. Despite the clarity of these core principles, SLED, under the direction of Defendant Mark Keel, has adopted and implemented procedures that far exceed the language and purpose of the Act. There is simply no justification for interpreting the Act to endorse, much less require, the publication of inaccurate information about out-of-state ex-registrants. Such conduct does nothing to provide for the safety of South Carolinians and violates Plaintiff's constitutional rights to substantive and procedural due process, equal protection, and double jeopardy under the Fifth and Fourteenth Amendments.

For these reasons, Plaintiff seeks **declaratory and injunctive relief** prohibiting Defendant from continuing to publish information about him on the South Carolina Sex Offender Registry ("the Registry"), and **monetary damages** for Defendant's defamatory

conduct in knowingly publishing false and injurious information about him on a public website.

## JURISDICTION AND VENUE

1.      This civil rights action is authorized and instituted under 42 U.S.C. § 1983, which permits citizens to seek relief from unconstitutional state action.

2.      This Court has jurisdiction over Plaintiff's federal constitutional claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

3.      Defendant's acts or omissions giving rise to the claims alleged herein occurred in the District of South Carolina. Defendant is a political subdivision of the State of South Carolina. Venue is therefore proper under 28 U.S.C. § 1391(b).

## PARTIES

4.      The Plaintiff, John Doe, is a resident of, and is currently domiciled in, the state of Georgia.

5.      Plaintiff respectfully requests permission from this Court to proceed under the pseudonym "John Doe." Being a named plaintiff in this lawsuit would trigger precisely the notoriety and reputational harm from which this case seeks relief.

6.      Defendant South Carolina Law Enforcement Division ("SLED") is a political subdivision of the State of South Carolina and is charged with statewide law enforcement.

7.      Defendant Mark Keel is the Chief of the South Carolina Law Enforcement Division.

[3]

## FACTUAL ALLEGATIONS

### A. South Carolina Sex Offender Registration and Notification Act ("SORA")

#### *Purpose of the Statute*

8.      The purpose of South Carolina's sex offender registry scheme (hereafter "the Act" or "SORA") is to "promote the state's fundamental right to provide for the … safety of its citizens," while respecting the "guaranteed constitutional rights of those who have violated our nation's laws." S.C. Code § 23-3-400.

9.      In accordance with that intent, the Chief of the State Law Enforcement Division ("SLED") is directed by statute to "develop and operate the registry to: collect, analyze, and maintain information; make information available to every enforcement agency in this State and in other states; and establish a security system to ensure that only authorized persons may gain access to [the] information gathered." S.C. Code § 23-3-410(A). SLED is also responsible for promulgating regulations in accordance with its statutory obligations. S.C. Code § 23-3-420.

10.      Information gathered under SORA is made publicly available on the internet via SLED's website. Any interested individual is able to search the sex offender database by offender name or by geographic area. A community member may also register online to receive a notification if a sex offender registers near an "address of interest."

11.      Mark Keel is the acting Chief of SLED, and is thus charged with creation and maintenance of the South Carolina Sex Offender Registry.

[4]

### *Registration Requirements*

12.     The scope and applicability of South Carolina's registration scheme are defined by statute. Section 23-3-430 defines who must register as a sexual offender.

13.     SORA requires registration for all persons "residing in the State of South Carolina," who have been convicted, either in South Carolina or in a comparable court, of certain enumerated sexual offenses.  S.C. Code § 23-3-430(A).

14.     A "resident" is defined in the Act as an individual who resides in South Carolina for at least thirty days out of a twelve-month period. S.C. Code § 23-3-430(B).

15.     SLED defines the term "sexual offender" exclusively by reference to this statute, which means that the term "sexual offender" is limited to South Carolina residents.[1]

### *Duration of Registration*

16.     "A person required to register pursuant to this article is required to register biannually for life." S.C. Code §23-3-460(A).

17.     If a person required to register pursuant to this article moves outside of South Carolina, the person must provide written notice within three business days of the change of address to a new state to the county sheriff with whom the person last registered. S.C. Code § 23-3-460(F).

---

[1] *See* SLED Online Registry FAQ, <u>What is a Sexual Offender?</u>, (Accessed July 23, 2020, http://scor.sled.sc.gov/FAQs.aspx#1).

18.     If a person moves away from South Carolina, he is no longer a "resident" within the meaning of section 23-3-430(B) and is no longer a "person required to register pursuant to this article," for the purposes of the lifetime registration provision found in section 23-3-460(A).

### *Removal from Registry*

19.     Section 23-3-430 provides a list of statutory methods for which an offender who is otherwise required to register in South Carolina may be removed from the registry. *See* S.C. Code §§ 23-3-430(E), (F), (G).

20.     Specifically, removal from the registry is permitted if:

- The conviction triggering registration is "reversed, overturned, or vacated on appeal and a final judgment has been rendered;"

- The conviction triggering registration is pardoned, "if the pardon is based on a finding of not guilty specifically stated in the pardon;" or

- The offender obtains habeas relief or a new trial pursuant to South Carolina law, and the new trial results in an acquittal.

21.     Like the registration duration requirements in section 23-3-460(A), these methods for removal provide relief to individuals who would otherwise owe a continued obligation to register in South Carolina.

22.     The Act does not specifically provide a mechanism by which an individual who is no longer a sex offender under the Act to be removed from the Registry.

### B. SLED's Implementation of SORA

23.     The online sex offender registry maintained by SLED lacks uniformity, far

[6]

exceeds the purpose of SORA, and abuses the plain language of the statute.

24.     ***First***, SLED allows a sexual offender to be removed from the sex offender registry if they meet the criteria in S.C. Code § 23-3-430(e), (f), or (g), but does **not** allow individuals who are not sexual offenders under South Carolina law to be removed from the registry.

25.     As a result, the online Registry includes countless individuals who—like Plaintiff—are not sex offenders under South Carolina law.

26.     Information published about these out-of-state individuals is also inaccurate. When a person is required to register as a sex offender under SORA, they are required to provide updated information to law enforcement at least every six months. This flow of information ceases when an individual moves out of the state and is no longer required by statute to register. Not only does SLED continue to publish information about these individuals, but they also make no attempt to ensure that the information they are publishing about out-of-state individuals remains accurate or reliable. Unlike for active registrants, there is no statutory mechanism for Defendant to verify a person's information once they leave South Carolina.

27.     ***Second***, the online registry operated by SLED fails to provide any of the privacy protections required by SORA.

28.     SORA instructs SLED to "establish a security system to ensure that **only authorized persons** may gain access to [the] information gathered." S.C. Code § 23-3-410(A) (emphasis added). Yet contrary to this plain language, SLED's online registry publishes the entire statewide registry in a manner that makes **all** information available

to any person, at any time, without content restrictions, and without identification or a record of the requestor or the request.[2]

29.    ***Third***, SLED does not even treat out-of-state individuals uniformly.

30.    Some out-of-state listings, such as Plaintiff's, include names, photographs, description of offenses, and known addresses. Others, such as the listing in **Exhibit B**, display only a name and a designation of "out-of-state."

### C. Plaintiff "John Doe"

31.    Plaintiff John Doe lives in the State of Georgia with his wife and three children. With the lone exception of the 2010 misdemeanor conviction described below, Plaintiff has maintained a pro-social and law-abiding life.

### *Underlying Offense*

32.    In July of 2010 Plaintiff John Doe was charged with having inappropriate internet contact with a Colorado law enforcement officer who was masquerading as an underage girl. Plaintiff, who was twenty-years-old at the time, was in a Yahoo chatroom and requested to exchange naked pictures with 'little_poker_gurl94' and 'choirgirl9409.' Both screen names were fake accounts that were being managed by an officer with the Gilpin County Sheriff's Office.

33.    In October of 2011, Plaintiff appeared in Gilpin County, Colorado, and accepted a plea agreement. Plaintiff pled guilty to a deferred judgment and sentence to

---

[2] SLED's implementation of SORA was recently struck down on these grounds in the Richland County Circuit Court, and the ruling is currently under review in the South Carolina Court of Appeals.

a felony charge of Internet Exploitation of a Child and also pled guilty to a misdemeanor charge of Unlawful Sexual Contact. The court imposed an indeterminate term of probation of 10 years to life.

### *Response to Treatment*

34.    Following his conviction, Plaintiff was heavily monitored and was required to participate in intensive sex offender treatment as a condition of his probation. Dr. Thomas Martin—a board-certified psychiatrist in Columbia, South Carolina—was responsible for overseeing Plaintiff's group therapy sessions.

35.    On December 5, 2013, Dr. Martin wrote a letter to Plaintiff's probation officer indicating that Plaintiff completed his treatment and had demonstrated "excellent leadership abilities, good insight, a positive attitude, … and was a model group member." Dr. Martin went on to conclude, "with a reasonable degree of medical and psychiatric certainty," that Plaintiff was a "very low risk to re-offend." *Exhibit A.*

36.    Based on Plaintiff's positive response to treatment and high level of compliance with probation, the probation office recommended that Plaintiff be successfully discharged from probation early. In December of 2013 the trial judge in Plaintiff's case granted his motion to terminate probation. As a result, the felony charge was dismissed and the case was closed.

37.    Early discharge from sex offender probation is exceedingly rare in Colorado. On average, Colorado offenders who receive indeterminate-length sentences serve 200% of the sentence imposed by the court.

### *History of Residence and Registration*

38.     Plaintiff lived in Greenville, South Carolina, while he was serving his probation sentence.

39.     While living in Greenville, Plaintiff registered as a sex offender with local authorities as required by statute. Plaintiff remained in Greenville until May 2015.

40.     In May 2015 Plaintiff moved to Marietta, Georgia, with his wife. Upon his relocation to Georgia, Plaintiff registered as a sex offender under the laws of that state.

41.     In August of 2016 Plaintiff successfully deregistered as a sex offender in the state of Georgia. As of the filing of this Complaint, Plaintiff is not a registered sex offender anywhere in the world.

42.     In April of 2018 Plaintiff contacted SLED and asked to be removed from the South Carolina Registry on account of his deregistration and lack of South Carolina residence.

### *Current Status*

43.     Plaintiff currently resides in Georgia with his wife and three young children. Plaintiff works full time and has been with the same company for over three years.

44.     Plaintiff has not committed any new law violations since the 2010 Colorado case.

### D.  Defendant's implementation of SORA is not rationally related to promoting public safety in South Carolina.

45.     There is no rational basis for singling out sexual offenders for lifelong ostracism and surveillance.

[10]

46.    Research shows that sexual offenders are *less* likely to commit new offenses than other offenders. The largest single study of sex offender recidivism found that the overall re-arrest rate for sexual offenders was over 50% lower than the re-arrest rate of non-sex offenders. Moreover, the study found that the overall sexual recidivism rate was only 5.3%.

47.    These findings have been reproduced in many other studies, including in a New York study that found that 95% of all arrests for sexual offenders were of individuals who did not have a prior sexual offense conviction.

48.    Research also shows that public registries are demonstrably counterproductive because they do not decrease, and likely *increase*, recidivism. The prevailing explanation for this data is that the punitive impacts associated with sex offense registries exacerbate predictive factors for recidivism, such as homelessness, joblessness, and lack of healthy pro-social relationships.

49.    In 2010 the United States Department of Justice provided grant funding for a study of the effectiveness of South Carolina's SORA. The study was executed by the Medical University of South Carolina and drew its conclusions from a statistical analysis of pre- and post-SORA sexual offending and recidivism data.

50.    A chief concern of the study was "[t]o examine whether South Carolina registration and notification policies have the intended effect of reducing sexual recidivism for known sex offenders[.]" After evaluating the data, the study found that "South Carolina's SORN policy has **no effect** on deterring the risk of sexual recidivism," that "registered sex offenders were **no less likely** to recidivate than non-registered sex

[11]

offenders," and ultimately concluded that the downstream impacts of South Carolina

SORNA "could be to **reduce community safety**."

### E. Sex Offender Registration laws like SORA have severe, dangerous, and punitive consequences.

51.      Over twenty-years of empirical and anecdotal data shows a disturbing

portrait of the real-life consequences of sex offender registry schemes.[3] The

consequences of registration and publication include rampant societal alienation,

joblessness, homelessness, verbal aggression, menacing, and even physical violence.

52.      In 2000, the United States Department of Justice funded a research

project to assess the impact of Wisconsin's sex offender registration and notification

system. As a part of the study, researchers interviewed 30 sex offenders in communities

throughout Wisconsin about the impact on the registration and notification system on

their lives. Every interviewee expressed some degree of concern for their personal

safety because of the notification scheme. Eighty-three percent of interviewees reported

being excluded from their residence, and seventy-seven percent reported being

harassed or threatened by nearby residents or strangers.

53.      In 2014, the Justice Policy Journal conducted a study entitled

"Understanding collateral consequences of registry laws." During the data-collection

portion of the study, the researchers successfully received feedback from registered sex

---

[3] *See*, *e.g.*, *Godfrey v. Doe*, 2002 WL 1798881 (U.S.), The Office of the Public Defender for the State of New Jersey, the Association of Criminal Defense Lawyers of New Jersey, and the American Civil Liberties Union of New Jersey, as *Amici Curiae* In Support of Respondents.

offenders in Pennsylvania (83), Texas (165), and Wisconsin (195). Of the 443

respondents, 49.9% reported that they had lost a job as the result of the sex offender

registry, 54.4% reported they lost a place to live, 41.8% reported they had been

harassed in person, and 13.6% reported they had been physically assaulted/attacked

because of their status on the sex offender registry.

54.    Projecting those statistics to the over 10,000 registered sex offenders in

South Carolina predicts that over 1,300 South Carolinians have been physically

assaulted because of South Carolina's counter-productive publication of their sex

offender status on the online registry.

### F.  Plaintiff Doe has experienced multiple acute injuries from Defendant's erroneous publication of his information on the Registry.

55.    As a result of Defendant's refusal to remove his information from their sex

offender registry, Plaintiff has suffered many needless and avoidable injuries.

56.    Plaintiff's wife was a school teacher, and his children are now attending

elementary school. Plaintiff was unable to visit his wife at work and now cannot attend

school functions for his children because of Defendant's refusal to remove false

information from their sex offender registry.

57.    Plaintiff's oldest child required medical care at Children's Hospital. Plaintiff

was prevented by the hospital security personnel from accompanying his child to a

procedure because of Defendant's refusal to remove false information from their sex

offender registry.

58.     When Plaintiff's child had a follow-up procedure, Children's Hospital only permitted Plaintiff to join his son because Plaintiff employed an attorney to make his case to the hospital.

59.     Plaintiff has also experienced negative employment consequences from Defendant's insistent publication of stale information. In his current position Plaintiff has experienced negative repercussions when a client searched Plaintiff's name on the internet and found Defendant's false and stale information listing Plaintiff as a registered sex offender.

60.     Plaintiff is also currently applying for new employment and has, even after being identified as a top candidate, not been hired because his potential employers think (because of Defendant's conduct) that he is a registered sex offender.

61.     In at least one instance, a potential employer ran a background check that showed Plaintiff as a sex offender in South Carolina but that did not return any results showing the underlying misdemeanor conviction out of Colorado. Plaintiff has had multiple follow-up conversations with this potential employer and the issue has not yet been resolved.

62.     Plaintiff's ability to travel has also been limited as a result of Defendant's conduct.

63.     Plaintiff was prevented from entering Mexico on his honeymoon because of the South Carolina Registry.

64.     In March of 2019 Plaintiff's travel booking with Carnival Cruises was cancelled on three separate occasions because Plaintiff was flagged as a registered sex offender in the state of South Carolina.

65.     Plaintiff expects that these injuries, and injuries like them, will continue to occur for the rest of his life unless this Court grants relief.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### State Law Declaratory Relief

66.     Plaintiff hereby reincorporates and reasserts each and every preceding paragraph contained in this Complaint.

67.     SLED is violating both the plain language and legislative intent of SORA by implementing and operating a Registry that fails to impose any restraints on the public's access to information, and that publishes false, stale, or unconfirmed information about individuals that are not "sex offenders" under South Carolina law.

68.     Publicly and inaccurately branding out-of-state individuals as "sex offenders" does not "promote the state's fundamental right to provide for the … safety of its citizens," and does not honor the "guaranteed constitutional rights of those who have violated our nation's laws."

69.     Plaintiff John Doe is not a sex offender under South Carolina law, and his inclusion on the Registry is not authorized by SORA. As such, SLED's conduct listing

Plaintiff on the Registry violates South Carolina law and should be enjoined by this Court.

70.    Plaintiff also seeks attorneys' fees and costs on Claim One pursuant to S.C. Code § 15-77-300, which authorizes the imposition of attorneys' fees against a State entity.

**SECOND CLAIM FOR RELIEF**
**<u>42 U.S.C. § 1983</u>**
**Substantive Due Process – Fourteenth Amendment**

71.    Plaintiff hereby reincorporates and reasserts each and every preceding paragraph contained in this Complaint.

72.    42 U.S.C. § 1983 provides that:

"Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected to any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress[.]"

73.    At its heart, substantive due process was intended to protect the individual from the arbitrary exercise of State power.

74.    To that end, the substantive due process clause prohibits the government from burdening a fundamental individual right unless it can show that the burden is *necessary* to achieve a *compelling* public purpose.

75.    If state action burdens a right not traditionally considered fundamental, then the Plaintiff bears the burden to prove that the burden is not rationally related to a legitimate public purpose.

[16]

## A. Right to Privacy

76.    The right to privacy is a fundamental personal right which emanates from the totality of the constitutional scheme under which we live. It is, according to Justice Brandeis, "the right to be let alone," which is "the right most valued by civilized men."

77.    Plaintiff's Colorado conviction for misdemeanor unlawful sexual contact is publicly available information. Even so, the right to privacy can be violated by the unfettered dissemination of otherwise public information.

78.    To avoid violating the due process clause, the government must demonstrate that the dissemination of information does not exceed its statutory purpose and that it is narrowly tailored to the accomplishment of a legitimate government interest.

79.    Publication of information on an unsecured internet database—such as by the Defendant here—is substantively different than all other forms of information dissemination. As the Supreme Court has held, "[b]ecause of the uniquely ubiquitous nature of the internet, any negative effects of government regulation—such as invasion of privacy—are magnified."

80.    Moreover, broadcasting information about all past sex offenders on the internet does not limit its dissemination to those to whom the particular offender may be of concern. Particularly as it relates to individuals like Plaintiff—*i.e.* those that do not reside in South Carolina and do not owe any reporting obligations to South Carolina— the continued publication of stigmatizing information inflicts gratuitous injury to those individuals' privacy rights.

[17]

81.    SLED does not claim an interest in Plaintiff's whereabouts and does not demand his continued registration. Despite this, they claim to have an interest in continuing their widespread and unfettered publication of intensely stigmatizing information about Plaintiff coupled with personal information like his out-of-state home address. These two positions are irreconcilable.

82.    Worldwide dissemination of the Plaintiff's criminal history, picture, and home address is clearly excessive in relation to the state's purpose of protecting South Carolina citizens from potential harm. As such, Defendant's conduct violates Plaintiff's constitutional right to privacy and substantive due process.

**B.  Right to Parent**

83.    The interests of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by the Supreme Court. The right to familial association and, in particular, the right to parent your children, has been recognized for nearly a full century and is "perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme Court]."

84.    Defendant's continued publication of Plaintiff's name, photograph, address, and offense on the South Carolina sex offense registry has adversely affected Plaintiff's fundamental right to familial association. Plaintiff's ability to accompany his children to doctor's appointments, medical procedures, and school events has been foreseeably damaged by Defendant's false claim that Plaintiff is a registered sex offender.

**C.  Rational Basis**

[18]

85.    Substantive due process requires a rational basis for legislation that results in *any* deprivation of life, liberty, or property.

86.    Plaintiff has experienced numerous deprivations as a result of SORA.

87.    The injuries suffered by Plaintiff are not rationally related to a legitimate public purpose for the State of South Carolina.

88.    On account of the above, Plaintiff seeks declaratory and injunctive relief.

89.    Plaintiff also seeks attorney's fees and costs pursuant to 42 U.S.C. § 1988, as well as pre-judgment interest and costs as allowable by federal law.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Procedural Due Process – Fourteenth Amendment**

90.    Plaintiff hereby reincorporates and reasserts each and every preceding paragraph contained in this Complaint.

91.    Plaintiff's third claim for relief is brought under 42 U.S.C. § 1983, which permits private citizens to bring suit against state actors for redress of constitutional violations.

**A. Stigma-Plus**

92.    When the State attaches a badge of infamy to a citizen, the right to procedural due process is triggered. Indeed, where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.

93.    As multiple federal circuit courts have noted, one "can hardly conceive of a state's action bearing more stigmatizing consequences" than labeling someone a sex offender.

94.    By publishing Plaintiff's name, picture, and other information on their online sex offender registry, South Carolina intentionally proselytizes a derogatory, injurious, and demonstrably false claim that Plaintiff is a presently-dangerous sexual predator.

95.    Plaintiff's name on the South Carolina sexual offender registry makes three claims about him that are patently injurious and demonstrably false—that he is dangerous, that he is incorrigible, and that he is required to register as a sex offender.

96.    These claims inflict constitutional injury upon Plaintiff sufficient to require a "name-clearing hearing" under the due process clause.

**B. No Opportunity to be Heard**

97.    The federal due process clause also demands that the State provide, prior to any deprivation of life, liberty, or property, a meaningful opportunity to be heard.

98.    Here, Defendant failed to provide Plaintiff with a meaningful opportunity to be heard regarding the publication of his information on their Sex Offender Registry.

99.    Further, Defendant fails to provide an opportunity to be heard on new developments (such as relocation, deregistration elsewhere, designation as "very low risk" to recidivate, etc.) that bear on whether Plaintiff should be published on Defendant's Sex Offender Registry.

100.    On account of the above, Plaintiff seeks declaratory and injunctive relief on Claim Three.

101.    Plaintiff also seeks attorney's fees and costs pursuant to 42 U.S.C. § 1988, as well as pre-judgment interest and costs as allowable by federal law.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Equal Protection – Fourteenth Amendment**

102.    Plaintiff hereby reincorporates and reasserts each and every preceding paragraph contained in this Complaint.

103.    Plaintiff's fourth claim for relief is brought under 42 U.S.C. § 1983, which permits private citizens to bring suit against state actors for redress of constitutional violations.

104.    At its core, the Equal Protection clause requires similar treatment for similarly situated individuals. An Equal Protection violation can result from treating like-individuals differently *or* from treating differing individuals the same. Defendant's implementation of SC-SORA violates the equal protection clause in both ways.

**A. Indiscriminate Grouping of Dissimilar Offenders**

105.    SORA indiscriminately requires lifetime registration. This scheme treats offenders with minor convictions and who exhibit no future dangerousness—those that are empirically unlikely to commit crime—the same as offenders who committed horrendous crimes and exhibit objective indicators of future dangerousness.

106.    This conduct violates the Equal Protection clause.

[21]

**B. Disparate Treatment of Out-of-state Offenders**

107.    As a resident of Georgia, Plaintiff's membership is in the class of persons who do not live in South Carolina and who owe no obligation to register pursuant to SORA. As a member of this class, South Carolina's publication of Plaintiff's personal information along with the dangerous public shaming associated therewith constitutes arbitrary disparate treatment.

108.    Plaintiff does not live in South Carolina; yet the State, perhaps by misapplication of its own law, punishes Plaintiff as if he were a sex offender living in their midst.

109.    In this way, South Carolina treats Plaintiff differently than the thousands of individuals with qualifying sexual offenses that, like Plaintiff, do not live in the State of South Carolina.

110.    Defendants also lack uniformity in how they treat out-of-state offenders on the Registry. Notably, the amount of information shared about out-of-state individuals varies dramatically.

111.    For some unknown reason, Plaintiff is an out-of-state individual about whom Defendants publishes a great deal of information.

112.    On account of the above, Plaintiff seeks declaratory and injunctive relief on Claim Four.

113.    Plaintiff also seeks attorney's fees and costs pursuant to 42 U.S.C. § 1988, as well as pre-judgment interest and costs as allowable by federal law.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Double Jeopardy – Fifth and Fourteenth Amendment**

114.    Plaintiff hereby reincorporates and reasserts each and every preceding paragraph contained in this Complaint.

115.    Plaintiff's fifth claim for relief is brought under 42 U.S.C. § 1983, which permits private citizens to bring suit against state actors for redress of constitutional violations.

116.    The Fifth Amendment prohibits multiple punishments for the same crime. The amendment, held to apply to the several states by way of the Fourteenth Amendments, states that:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; **nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb**; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.
>
> U.S. CONST. amend. V. (emphasis added).

117.    Although SORA claims to be administrative in nature, its methods far exceed any administrative purpose and thus reveal Defendant's true purpose to be punitive.

118.    SORA's indiscriminate public notification regimen, which requires placement of Plaintiff's face on a webpage under the label "Registered Sex Offender,"

represents a modern form of historical shaming punishments once used to mark an offender as someone to be shunned.

119.    Moreover, the fact that SORA's lifetime registration and public notification is tied to a registrant's conviction—not his or her future dangerousness or likelihood of re-offense—adds to the impression that the SORA retributively targets past guilt instead of preventing future crime. But the clearest illustration of this point is that the Act fails to provide a mechanism for someone who is not a sex offender, either by death or relocation, to be removed from the public notification database.

120.    If Defendant's conduct was aligned with the administrative task of protecting the state of South Carolina from sexual offenders, then its registry would purge nonresidents from its system. Instead, Defendant's insistence that all persons who have ever been convicted of a qualifying sexually-related offense and have lived for more than thirty straight days within the borders of South Carolina be publicly shamed forever reveals that their intent is transparently punitive.

121.    Because Plaintiff has served and satisfied the sentence imposed for his Colorado crime, Defendant's punitive publication of his name, face, and prior conduct in a manner consistent with historical forms of punishment violates the Fifth Amendment's prohibition on double jeopardy.

122.    Plaintiff seeks declaratory and injunctive relief on Claim Five.

123.    Plaintiff also seeks attorney's fees and costs pursuant to 42 U.S.C. § 1988, as well as pre-judgment interest and costs as allowable by federal law.

**SIXTH CLAIM FOR RELIEF**
**South Carolina Tort Claims Act**

[24]

**Defamation**

124.    Plaintiff hereby reincorporates and reasserts each and every preceding paragraph contained in this Complaint.

125.    This claim for relief is brought under S.C. Code § 15-78-10, *et seq.*, which waives state sovereign immunity for tortious conduct committed in the line of duty by agents of South Carolina.

126.    SLED published—and continues to publish—Plaintiff's name, address, picture, and criminal history on its "Sex Offender Registry."

127.    Publication of Plaintiff's information on the sex offender registry intentionally conveys three false and injurious statements: that Plaintiff is a sex offender under South Carolina law (which he is not), that Plaintiff is dangerous to the community (which he is not), and that Plaintiff is being tracked by law enforcement because of his dangerousness (which he is not).

128.    These false statements are being broadcasted widely and notoriously on the internet with the intent that they be conveyed to third parties.

129.    SLED had knowledge that Plaintiff was no longer a sex offender under South Carolina law at least as early as 2015 when Plaintiff notified SLED of his move to Georgia.

130.    SLED had knowledge that Plaintiff was no longer a sex offender in *any* state as of April 2018, when Plaintiff notified SLED that he was no longer a sex offender and requested that he be removed from the South Carolina Registry.

131.    And finally, Plaintiff has experienced actual injuries as a result of SLED's defamatory conduct.

132.    Plaintiff seeks compensatory and punitive damages as allowable by law on this Sixth Claim for Relief.

133.    Plaintiff also seeks attorneys' fees and costs on Claim Six pursuant to S.C. Code § 15-77-300, which authorizes the imposition of attorneys' fees against a State entity.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that the Court:

**1.**    Declare that Defendant's conduct is not authorized by SORA and thus violates South Carolina law.

**2.**    Declare that Defendant's conduct is unconstitutional as applied to Plaintiff, in violation of the Fifth and Fourteenth Amendments to the United States Constitution;

**3.**    Permanently restrain and enjoin Defendant, including all of Defendant's officers, agents, servants, employees, attorneys, and other persons in active concert or participation with Defendant, from publishing Plaintiff's information on the South Carolina Sex Offender Registry;

**4.**    Award Plaintiff attorneys' fees and expenses in this action;

**5.**    Award Plaintiff his costs of associated with this action;

**6.**    Order a jury trial on issues of monetary and punitive damages related to Plaintiff's defamation claim;

**7.**    Grant such other and further relief as this Court deems just and proper under in the circumstances.

[26]

Respectfully submitted this 27th day of July, 2020.


*s/ Allen Chaney*

_____

**Allen Chaney, (Fed. ID No. 13181)**
**SOUTH CAROLINA JUSTICE PROJECT**
1220 Laurens Road, Ste B
Greenville, SC 29607
Ph. (720) 634-5493
allen@scjusticeproject.org


*s/ Susan K. Dunn*

_____

**Susan K. Dunn**
**(Federal Bar No. 647)**
**ACLU OF SOUTH CAROLINA**
P.O. Box 20998
Charleston, SC 29413
Ph. 843-720-1423
sdunn@aclusc.org

**Shirene C. Hansotia**
**ACLU OF SOUTH CAROLINA**
**(Federal Bar No. 12558)**
P.O. Box 20998
Charleston, SC 29413
Ph. 843-720-1423
shansotia@aclusc.org


*Attorneys for Plaintiff*

[27]