

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:20-2755-MGL |
| | § | |
| MARK KEEL, *in his official capacity as Chief* | § | |
| *of South Carolina Law Enforcement Division*, | § | |
| and SOUTH CAROLINA LAW | § | |
| ENFORCEMENT DIVISION (SLED), | § | |
| Defendants. | § | |

**AMENDED MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff John Doe (Doe) filed this lawsuit against Defendants Mark Keel (Keel), in his

official capacity as Chief of the South Carolina Law Enforcement Division (SLED), and SLED

(collectively, Defendants).

Doe brought the following causes of action: (1) a state law declaratory relief claim, (2)

constitutional claims under 42 U.S.C. § 1983 for violations of the Fourteenth and Fifth Amendments,

and (3) a state law claim for defamation.  The Court has federal question jurisdiction over the § 1983

constitutional claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state claims

in accordance with 28 U.S.C. § 1367.  In Doe's complaint, he sought declaratory, injunctive, and

monetary relief.

Pending before the Court are Doe's and Defendants' motions for summary judgment. Having carefully considered the motions, the responses, the replies, the record, and the applicable law, it is the judgment of this Court Doe's motion will be denied and Defendants' motion will be granted.

## II.     FACTUAL AND PROCEDURAL HISTORY

"In July of 2010[,] . . . Doe was charged with having inappropriate [I]nternet contact with a Colorado law enforcement officer who was masquerading as an underage girl." *Id*. ¶ 32. Doe, "who was twenty-years-old at the time, was in a Yahoo chatroom and requested to exchange naked pictures with 'little_poker_gurl94' and 'choirgirl9409.'" *Id*. "Both screen names were fake accounts that were being managed by an officer with the Gilpin County Sheriff's Office." *Id*.

"In October of 2011, [Doe] appeared in Gilpin County, Colorado, and accepted a plea agreement." *Id*. ¶ 33. Doe "pled guilty to a deferred judgment and sentence to a felony charge of Internet Exploitation of a Child and . . . to a misdemeanor charge of Unlawful Sexual Contact. The court imposed an indeterminate term of probation of [ten] years to life." *Id*.

"Following his conviction, [Doe] was heavily monitored and was required to participate in intensive sex offender treatment as a condition of his probation. Dr. Thomas Martin—a board-certified psychiatrist in Columbia, South Carolina—was responsible for overseeing [Doe's] group therapy sessions." *Id*. ¶ 34.

"On December 5, 2013, Dr. Martin wrote a letter to [Doe's] probation officer indicating that [he] completed his treatment and had demonstrated 'excellent leadership abilities, good insight, a positive attitude, and was a model group member.'" *Id*. ¶ 35 (alteration marks omitted). "Dr. Martin

went on to conclude, 'with a reasonable degree of medical and psychiatric certainty,' that [Doe] was a 'very low risk to re-offend.'" *Id*. (citation omitted),

"Based on [Doe's] positive response to treatment and high level of compliance with probation, the probation office recommended . . . [Doe] be successfully discharged from probation early." *Id*. ¶ 36. "In December of 2013[,] the trial judge in [Doe's] case granted his motion to terminate probation. As a result, the felony charge was dismissed and the case was closed." *Id*.

Doe "lived in Greenville, South Carolina, while he was serving his probation sentence." *Id*. ¶ 38. "While living in Greenville, [Doe] registered as a sex offender with local authorities as required by statute. [Doe] remained in Greenville until May 2015." *Id*. ¶ 39.

"In May 2015 [Doe] moved to Marietta, Georgia, with his wife. Upon his relocation to Georgia, [Doe] registered as a sex offender under the laws of that state." *Id*. ¶ 40. "In August of 2016[,] [Doe] successfully deregistered as a sex offender in the state of Georgia."

"In April of 2018 [Doe] contacted SLED and asked to be removed from the South Carolina Registry on account of his deregistration and lack of South Carolina residence." *Id*. ¶ 42. "Defendant[s] refus[ed] to remove his information from their sex offender registry[.]" *Id*. ¶ 55.

"If a person moves away from South Carolina, he is no longer . . . required to register" in South Carolina as a sex offender. *Id*. ¶ 18. "The Act does not specifically provide a mechanism by which an individual who is no longer [required to register as] a sex offender under the Act to be removed from the Registry." *Id*. ¶ 22.

After Doe filed this lawsuit, the parties filed a stipulation of dismissal as to Doe's defamation claim. Consequently, he abandoned his claim for monetary relief. All that remains are Doe's claims for declaratory and injunctive relief.

3

Doe and Defendants subsequently filed their motions for summary judgment, responses in opposition to the motions, and replies in support. After that, having found no controlling authority on one of the parties' key arguments, the Court certified the following question to the South Carolina Supreme Court, as modified by that court: "Does the South Carolina Sex Offender Registry Act (SORA) permit the publication of nonresident offenders—i.e., individuals with qualifying sexual offenses who do not live in South Carolina—on the state's public sex offender registry?" *Doe v. Keel*, --- S.E.2d ----, 2023 WL 5076105, at *1 (S.C. Aug. 9, 2023). The Supreme Court answered the question in the affirmative. *Id*.

The Court, having been fully briefed on the relevant issues, is now prepared to adjudicate the parties' motions.


III.    **STANDARD OF REVIEW**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

4

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23. Hence, the granting of summary judgment involves a three-tier analysis.

First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. Fed. R. Civ. P. 56(e). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Second, the Court must ascertain whether that genuine issue pertains to material facts. Fed. R. Civ. P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed. R. Civ. P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. The primary issue is whether the material facts present a substantive disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251–52. The substantive law of the case identifies which facts are material. *Id*. at 248. Only

disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

## IV.    DISCUSSION AND ANALYSIS

### A.    *Whether SLED is a proper party in this action*

One preliminary matter before beginning in earnest to consider the parties' primary arguments: Defendants contend "SLED is not a proper party in any action brought pursuant to 42 U.S.C. § 1983." Defendants' Motion at 7. Doe "agrees . . . SLED is not a proper Defendant for his claims under 42 U.S.C. § 1983[,] [and] does not object to dismissing SLED from this action and otherwise proceeding on [his other claims] against . . . Keel in his official capacity." Doe's Response to Defendants' Motion at 2.

The Court concurs that SLED is an improper party in this lawsuit. Accordingly, the Court will grant Defendants motion for summary judgment on this issue.

### B.    *Whether Doe or Defendants are entitled to summary judgment on Doe's state declaratory relief claim*

In Doe's complaint, he asked the Court to declare it improper, as per the Act, for SLED to continue to publish his name, picture, offense, vehicle information, and last known address (collectively, name and other information) on the Registry. He maintains Defendants "are construing the state law in a way that violates federal constitutional law." Doe's Response to Defendants' Motion at 3. Defendants insist, however, that the Court is unable to order Defendants to comply with state law. Defendants' Motion at 8.

As the Court noted above, it certified a question to the South Carolina Supreme Court regarding whether it is appropriate for Doe to remain on the South Carolina Registry. Contrary to Doe's arguments, that court decided it proper for SLED to continue to publish his name and other information. But, although "Doe [also] ask[ed] [the South Carolina Supreme Court] to address

6

several federal constitutional claims. . . . " the court determined that, "[b]ecause these claims are beyond the scope of the certified question, we decline to address them." *Keel*, 2023 WL 5076105, at *5.

Given the South Carolina Supreme Court's answer to the certified question, the Court need not delve into the constitutional issue of whether it is within the province of this Court to grant Doe's state claim for declaratory relief.

All said, the Court must deny Doe's motion for summary judgment as it relates to Doe's state declaratory act claim, and grant Defendants' motion. The Court will consider Doe's constitutional claims below.

### C.    Whether Doe or Defendants are entitled to summary judgment on Doe's substantive due process claims

Doe offers two overarching ways in which he says Defendants are violating his substantive due process rights: publishing his name and other information on the Registry (1) violates his right to privacy; and (2) is not rationally related to a legitimate State interest.

As the Court explains below, Defendants have an opposite view.

#### 1.    Whether publishing Doe on the Registry violates his right to privacy

##### a.    Whether Doe's interest in privacy outweighs the State's interest in publishing his name and other information on the Registry

Under Doe's right-to-privacy argument, he first contends his "interest in privacy outweighs the State's interest in publishing his name and [other] information on the Registry." Doe's Motion at 16 (emphasis omitted). To this, Defendants contend Doe's "arrest and subsequent conviction on sexual offenses are not subject to any constitutionally-recognized right of privacy or liberty interest." Defendants' Motion at 14.

"Although the Constitution does not explicitly mention any right of privacy, the [Supreme] Court has recognized that one aspect of the liberty protected by the Due Process Clause of the

Fourteenth Amendment is a right of personal privacy, or a guarantee of certain areas or zones of privacy." *Carey v. Population Servs., Intern*., 431 U.S. 678, 684 (1977) (citation omitted) (internal quotation marks omitted) (alteration marks omitted).

"The cases sometimes characterized as protecting 'privacy' have . . . involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 876, 429 U.S. 589, 598–600 (1977) (footnotes omitted). This case, of course, concerns the latter: "avoiding disclosure of personal matters[.]" *Id*. at 599 (footnote omitted).

"[A] right to privacy protects only information with respect to which the individual has a reasonable expectation of privacy." *Walls v. City of Petersburg*, 895 F.2d 188, 193 (4th Cir. 1990). One "has no reasonable expectation of privacy in . . . information [that] is already part of the public records." *Id*. 194. Doe's Colorado conviction is, of course, public information.

Inasmuch as the right to informational privacy is not an enumerated fundamental right deserving of strict scrutiny, the Fourth Circuit applies a balancing test, which weighs the privacy interest at stake against the State's interest in disclosure. *See Walls*, 895 F.2d at 192 ("The right to privacy . . . is not absolute. If the information is protected by a person's right to privacy, then the defendant has the burden to prove that a compelling governmental interest in disclosure outweighs the individual's privacy interest.").

"The Constitution does not provide [one] with a right to keep his registry information private, and the Act does not impose any restrictions on [one's] personal rights that are fundamental or implicit in the concept of ordered liberty, such as his procreative or marital rights." *Cutshall v. Sundquist*, 193 F.3d 466, 481 (6th Cir. 1999). Thus, "notwithstanding the nontrivial interest in one's home address[,] . . . whatever privacy interest the Registrants have in their home addresses is substantially outweighed by the State's interest in expanding the reach of its notification to protect

additional members of the public." *A.A. ex rel. M.M. v. New Jersey*, 341 F.3d 206, 213 (3rd Cir. 2003).

Additionally, albeit in an unpublished opinion, the Fourth Circuit recently held , "[t]o the extent that any of the information in the registry could be deemed nonpublic, such as a registrant's work or home address or appearance, the public disclosure is justified by the government's interest in protecting the public by alerting them of the location of known sex offenders." *Prynne v. Settle*, No. 19-1953, 2021 WL 717054, at *8 (4th Cir. Feb. 24, 2021).

Concerning Doe's argument that, "[a]s a nonresident offender, publishing Doe's name on the Registry does not advance the goals of the Act[,]" Doe's Motion at 18, as the South Carolina Supreme Court explained,

> [S]ection 23-3-400 reflects the General Assembly's intent to "promote the state's fundamental right to provide for the public health, welfare, and safety of its citizens" by providing "law enforcement with the tools needed in investigating criminal offenses." One such tool is the bank of information that is to be collected, analyzed, maintained, and made available to all enforcement agencies in this State and in other states pursuant to [the Act]. The information can hardly be made available to other states if it is not maintained in South Carolina.
>
> . . . .
>
> South Carolina has a legitimate and fundamental interest in promoting the public health, safety, and welfare of its citizens, regardless of imaginary boundary lines between states. . . . For example (and there are many), a sex offender who resides in and registers in South Carolina might move to Savannah, Georgia or Charlotte, North Carolina and not remain in South Carolina "for a total of thirty days during a twelve-month period." While that offender would not be deemed a resident of South Carolina for SORA purposes and would no longer be required to physically register, he or she could easily travel to and from South Carolina at convenient times for licit and illicit purposes. To summarily conclude a nonresident offender's information should be deleted from the Registry would ignore the purpose of SORA as stated in section 23-3-400.

*Doe*, 2023 WL 5076105, at *3 (citation omitted).

Consequently, the Court is unable to say Doe's "interest in privacy outweighs the State's interest in publishing his name and other information on the Registry."  Doe's Motion at 16 (emphasis omitted).

> **b.**    ***Whether Defendants' publication of Doe on the Registry implicates his personal security and thus elevates his privacy interest into a fundamental right***

In  Doe's second right-to-privacy argument, he states "publication of [him] on the Registry implicates his personal security and thus elevates his privacy interest into a fundamental right." Doe's Motion at 18 (emphasis omitted).  Further, according to Doe, "being listed on the Registry exposes him to avoidable risk of violence and harassment."  *Id*.

In response, Defendants maintain Doe failed to plead a personal security claim in his complaint; and he "should not be allowed to seek summary judgment on a new, unpled claim at the summary judgment stage after discovery has been completed."  Defendants' Response to Doe's Motion at 10.  In addition, Defendants maintain "[i]t is undisputed [Doe] has not been physically harmed[;]" and "[t]here is no evidence that he has ever been verbally harassed."  *Id*. at 11.

Inasmuch as Doe failed to raise this claim in his complaint, granting summary judgment to him on the claim would be inappropriate. *See Gilmour v. Gates, McDonald and Co*., 382 F.3d 1312, 1314 (11th Cir. 2004) ("[T]he Supreme Court has mandated a liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a).  This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage.").  But, even if he had plead such a claim, he would be unable to prevail.

The Third Circuit has "stated that the state interest [in having a sex registry], which [it] characterized as compelling, would suffice to justify the deprivation even if a fundamental right of the registrant's were implicated."  *Paul P. v. Verniero*, 170 F.3d 396, 404 (3rd Cir. 1999) (citation omitted) (internal quotation marks omitted).

"Although the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record." *Smith v. Doe*, 538 U.S. 84, 101 (2003). "The State makes the facts underlying the offenses and the resulting convictions accessible so members of the public can take the precautions they deem necessary before dealing with the registrant." *Id*.

Further, the harm Doe suggests is a result of his being listed on the Registry is not, of course, something mandated by the Registry. These supposed indirect consequences allegedly caused by third parties should, perhaps, be brought to the attention of Georgia law enforcement and other legal officials. Nevertheless, this alleged misbehavior on the part of others is insufficient to render the Act itself unconstitutional, no matter which standard of constitutional review the Court applies.

For these reasons, Doe is unable to prevail on his personal security claim.

### 2.    Whether publishing Doe on the Registry is rationally related to a legitimate State interest

"Doe concedes . . . South Carolina has a legitimate interest in providing for the safety of its citizens generally and, more specifically, in attempting to reduce sexual crime recidivism in the state. The problem," according to Doe, "is that publishing Doe on the Registry is an entirely irrational means to attain that goal." Doe's Motion at 19. Further, Doe contends, "[e]ven accepting the deferential nature of rational basis review, publishing Doe on the Registry fails." *Id*. In addition, according to Doe, "there is no data showing that the Act accomplishes any of its stated goals." *Id*. at 20.

In response, Defendants state, "[i]n applying the rational basis test, it is clear that SORA's requirements are rationally related to the governmental interests served by SORA including the protection of public safety and providing law enforcement with the tools needed to investigate sex offenses." Defendants' Motion at 16. "[T]hese interests" according to Defendants "continue to be

served even if the offender relocates out-of-state, particularly in [Doe's] case given his significant ties to South Carolina and his frequent and regular travel to the State." *Id.*

As the Court noted above, when a panel of the Fourth Circuit was faced with a similar argument, it held that "a registrant's work or home address or appearance . . . is justified by the government's interest in protecting the public by alerting them of the location of known sex offenders." *Prynne*, 2021 WL 717054, at *8. And, to again echo the words of the South Carolina Supreme Court, "[t]o summarily conclude a nonresident offender's information should be deleted from the Registry would ignore the purpose of SORA[.]" *Doe*, 2023 WL 5076105, at *3 .

Concerning Doe's "no data" argument, as the Court will more fully explain below, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993).

Accordingly, the Court is unable to agree with Doe that, under "the deferential nature of rational basis review, publishing Doe on the Registry fails." Doe's Motion at 20.

### 3.    Whether publishing Doe on the Registry violates his right to parent

Defendants contend Doe's right to parent claim "does not rise to the level of a substantive due process violation. The Act does not include restrictions on [Doe's] ability to have familial association or on his right to make parenting decisions for his children." Defendants' Motion at 18. Doe fails to offer any argument on this issue.

Consequently, Doe has waived any arguments he might have as to this aspect of his lawsuit. *See Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 n.* (4th Cir. 2014) (noting that failure to present legal arguments waives the argument).

For all of the aforementioned reasons, the Court will deny Doe's motion for summary judgment, and grant Defendants' motion, as to Doe's substantive due process claims.

**D.    Whether Doe or Defendants are entitled to summary judgment on Doe's procedural due process claim**

Defendants have moved for summary judgment on Doe's procedural due process claim.  Doe has failed to object.  Thus, the Court will grant Defendants' motion for summary judgment as to Doe's procedural due process claim.

**E.    Whether Doe or Defendants are entitled to summary judgment on Doe's Equal Protection claims**

As per the Equal Protection Clause of the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.  This "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

According to Doe, Defendants are violating his right to Equal Protection in two ways.  "First, by publishing his name on the state sex offender Registry, Defendants are treating Doe as if he is a resident of South Carolina.  Doe is not a resident of South Carolina and, under the Equal Protection Clause, must be treated like other nonresidents."  Doe's Motion at 21.

But, Doe is being treated the same as all other nonresidents who were on the sex registry when they lived in South Carolina: they remain on the Registry once they have moved to another state.  Therefore, Doe is unable to establish a Equal Protection claim as to this argument.

Second, Doe contends Defendants are "treating Doe differently than other nonresident offenders that they publish on the Registry. Doe has identified four examples of nonresident offenders that are listed on the Registry. . . .  Unlike Doe, these four offenders do not have a street address listed on the Registry."  Doe's Motion at 21.  Doe states these four "are demonstrative, not exhaustive."  Doe's Reply at 6.

As Defendants point out, however, "[p]erfection in making the necessary classifications is neither possible nor necessary." *Schweiker v. Wilson*, 450 U.S. 221, 234 (1981) (citation omitted)

(internal quotation marks omitted).  The Supreme Court has long held "[a]  classification having some reasonable basis does not offend against [the Equal Protection] clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality."  *Lindsley v. Natural Carbonic Gas Co*., 220 U.S. 61, 78 (1911).

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect."  *Dandridge v. Williams*, 397 U.S. 471, 485 (1970).  "If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality." *Id* (citation omitted) (internal quotation marks omitted). "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific."  *Id* (citation omitted) (internal quotation marks omitted).

In sum, the Court is unable to say Doe's arguments here amount to a colorable Equal Protection claim.  As such, the Court will deny Doe's motion for summary judgment on his Equal Protection claim; and it will grant Defendants' motion on this claim.

> **F.       Whether Doe or Defendants are entitled to summary judgment on Doe's Double Jeopardy claim**

"Doe . . . argues that the Act, especially if construed to require permanent online publication of nonresident offenders, constitutes an unconstitutional second punishment under the Fifth Amendment."  Doe's Motion at 22.  According to Doe, "[t]he Act constitutes punishment for the purposes of the Double Jeopardy Clause."  *Id*. at 23 (emphasis omitted).

Defendants maintain, however, that "because SORA presents a non-punitive statutory scheme, the application of the registry requirements under South Carolina law to [Doe] is not violative of the Double Jeopardy Clause."  Defendants' Motion at 25.

The Fifth Amendment to the Constitution, made applicable to the states by the Fourteenth Amendment, states "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb[.]"   In other words, the Double Jeopardy Clause protects against two criminal punishments.  *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938).

The Supreme Court "has often stated that the question whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction."  *United States v. Ward*, 448 U.S. 242, 248 (1980).   An "inquiry in this regard has traditionally proceeded on two levels."  *Id*.

"First, [the Court will] set out to determine whether [the legislature], in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other."  *Id*.  "Second, where [the legislature] has indicated an intention to establish a civil penalty, [the Court will] inquire[ ] further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention."  *Id*. at 248-49.

### 1.   Whether the legislature indicated either expressly or impliedly whether the Act is civil or criminal in nature

The Court will first determine whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for" it being a civil or a criminal penalty.  *Id*. at 248.

The relevant statute, S.C. Code § 23–3–400, provides as follows:

> The intent of this article is to promote the state's fundamental right to provide for the public health, welfare, and safety of its citizens. Notwithstanding this legitimate state purpose, these provisions are not intended to violate the guaranteed constitutional rights of those who have violated our nation's laws.

> The sex offender registry will provide law enforcement with the tools needed in investigating criminal offenses. Statistics show that sex offenders often pose a high risk of re-offending.  Additionally, law enforcement's efforts to protect communities, conduct investigations, and apprehend offenders who commit sex offenses are impaired by the lack of information about these convicted offenders who live within the law enforcement agency's jurisdiction.

*Id*.

Thus, it is abundantly clear from the language of the Act that the General Assembly lacked any intent to punish sex offenders, which would render it a criminal statute. Instead, as the South Carolina Supreme Court recently observed,

> Read plainly, section 23-3-400 tells us several things. First, SORA's threshold purpose is to promote the public health, welfare, and safety of South Carolina citizens. Second, information placed on the Registry provides law enforcement with the tools needed to investigate criminal offenses. Third, statistics show "sex offenders often pose a high risk of re-offending." Fourth, the emphasized word "additionally" enhances—but does not restrict—both the purpose of SORA (promoting the public health, welfare, and safety of South Carolina citizens) and the role of the Registry (providing law enforcement with tools necessary to investigate criminal offenses). . . . SORA exists to protect the public from sex offenders who may re-offend and to aid law enforcement in solving sex crimes.

*Keel*, 2023 WL 5076105, at *2. In other words, it is a civil statute with the sole purpose of "protect[ing] the public from sex offenders who may re-offend and to aid law enforcement in solving sex crimes." *Id*.

Nevertheless, Doe argues "the text of the statute, its location within the state code, and the entities charged with its enforcement point to a conclusion that it was also intended to accomplish a punitive purpose[,]" Doe's Motion at 24. The Court is unpersuaded.

Given the Court's discussion and analysis herein, "[t]he fact that the Act's registration provisions are codified in the State's Code of Criminal Procedure is not dispositive, since a statute's location and labels do not by themselves transform a civil remedy into a criminal one." *Smith*, 538 U.S. at 85–86. The fact of who enforces the Act is also not dispositive.

Therefore, the Court concludes the South Carolina legislature expressly indicated a preference for the Act being a civil penalty.

        2.      *Whether the statutory scheme of the Act is so punitive as to negate its indicated intention to establish a civil, versus criminal, penalty*

Second, where the legislature has indicated an intention to establish a civil penalty, as it has done so here, the Court "must inquire[ ] further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention." *Ward*, 448 U.S. at 248-49. "In regard to this . . . inquiry, . . . only the clearest proof [can] suffice to establish the unconstitutionality of a statute on such a ground." *Id*. at 249 (citation omitted) (internal quotation marks omitted).

Doe contends the Act "was [partially] intended to accomplish a punitive purpose. As such, Doe urges the court to neutrally evaluate the Act's purpose and effects instead of applying the [C]ourt to neutrally evaluate the Act's purpose and effects instead of applying the 'clearest proof' test. " Doe's Motion at 24-25. According to Defendants, however, "the application of SORA to [Doe] has been intended as non-punitive and is not in violation of the Double Jeopardy Clause." Defendants' Motion at 25.

The Supreme Court has provided the following five factors for the Court to consider when deciding whether a statute such as the one under consideration here is punitive: "[a] whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; [b] imposes an affirmative disability or restraint; [c] promotes the traditional aims of punishment; [d] has a rational connection to a nonpunitive purpose; or [e] is excessive with respect to this purpose." *Smith*, 538 U.S. at 97.

        a.      *Whether, in its necessary operation, the Act has been regarded in our history and traditions as a punishment*

Doe argues "sex offender notification schemes constitute modern iterations of historic forms of punishment[ ]" by shaming. Doe's Motion at 25-26.

But, "the sex offender registration and notification statutes are of fairly recent origin, which suggests that the statute was not meant as a punitive measure, or, at least, that it did not involve a traditional means of punishing." *Smith*, 538 U.S. at 97 (2003) (citation omitted) (internal quotation marks omitted).

> Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment . . . . It must be acknowledged that notice of a criminal conviction subjects the offender to public shame, the humiliation increasing in proportion to the extent of the publicity. And the geographic reach of the Internet is greater than anything which could have been designed in colonial times. These facts do not render Internet notification punitive. The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.

*Id.* at 99.

Thus, this factor weighs in favor of viewing the Act as being a civil penalty.

### b. Whether, in its necessary operation, the Act imposes an affirmative disability or restraint

Doe makes three arguments as to how the Act amounts to a restraint "that demonstrate its punitive nature[.]" Doe's Motion at 28. His contentions are as follows: "First, the Act's reporting obligations are far more onerous than those found to be nonpunitive in" Supreme Court precedent. "The Act indiscriminately requires lifetime, biannual registration for all offenders." *Id..* (citation omitted) (parenthetical omitted). Doe also complains about the consequences for failure to abide by the Act's reporting obligations. *Id*. 28-29.

Second, the Act's residency restrictions qualify as an affirmative restraint . . . [inasmuch as] the Act prohibits certain sex offenders from residing within one thousand feet of a school, daycare center, children's recreational facility, park, or public playground." *Id*. at 29. "Third, the Act's automatic lifetime electronic monitoring regime constitutes an affirmative restraint." *Id*. at 30.

Doe, however, has made an "as applied" challenge to the Act. *See* Amended Complaint, Prayer for Relief ¶ 2 (Doe "respectfully request that the Court[ ] [d]eclare . . . Defendant[s'] conduct is unconstitutional as applied to [Doe], in violation of the Fifth and Fourteenth Amendments to the United States Constitution[.]")  An as applied challenge attacks the constitutionality of a statute "based on a developed factual record and the application of a statute to a specific person." *Educ. Media Co. at Va. Tech, Inc. v. Insley*, 731 F.3d 291, 298 n. 5 (4th Cir.2013) (quoting *Richmond Med. Ctr. For Women v. Herring*, 570 F.3d 165, 172 (4th Cir.2009).

Therefore, none of the alleged restraints the Court listed above apply to Doe. First, he lacks any reporting requirements.  Second, the residency requirement as to the distance he must live from certain child-related entities in South Carolina is inapplicable to him inasmuch as he now lives in Georgia.  And third, he is free from electronic monitoring.

That said, the Supreme Court has opined "that an 'as-applied' analysis would prove unworkable.  Such an analysis would never conclusively resolve whether a particular scheme is punitive and would thereby prevent a final determination of the scheme's validity under the Double Jeopardy and Ex Post Facto Clauses." *Seling v. Young*, 531 U.S. 250, 263 (2001).

Nevertheless, given the Court's interpretation of controlling precedent, it declines to say these three requirements render the Act punitive.  Further, even if the Court concluded they amount to an affirmative disability or restraint, it would be unable to say they are punitive in effect so as to override the legislature's nonpunitive intent. *See Kansas v. Hendricks*, 521 U.S. 346, 363 (1997) ("[T]he mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment.").

The Court must weigh the extent of any disability or restraint these three requirements might impose on the sex registrants against the legislature's nonpunitive purpose of protecting the public. *See McGuire*, 50 F.4th at 1018  ("We must weigh the extent of the disability or restraint that the .

. . registration requirement imposes on . . . registrants against the legislature's nonpunitive purpose of protecting the public.").  Here, the legislature's nonpunitive civil purpose of protecting the public weighs much more heavily than does any disabilities or restraints that might be visited upon the sex registrants by the Act.

c.      **Whether, in its necessary operation, the Act promotes the traditional aims of punishment**

Doe maintains "[t]he Registry Act here reeks of retributive punishment.  By indiscriminately imposing lifetime registration and publication for an entire category of offenders, it serves to feed suspicion that something more than regulation of safety is going on."  Doe's Motion at 31 (citation omitted) (internal quotation marks omitted).

The word" indiscriminately" is defined by the Merriam-Webster Dictionary as "not marked by careful distinction: deficient in discrimination and discernment." https://www.merriam-webster. com/dictionary/indiscriminately (last accessed on September 24, 2023).  Thus, there is a fatal error in Doe's premise.  The registration and publication requirement is not indiscriminately imposed.  Instead, one is placed on the sex registry only after being convicted of a sex crime.  There is nothing indiscriminate about that.

Doe also states that "[t]he Registry Act also undoubtedly provides a deterrent effect."  Doe's Motion at 31.  In support of this argument, Doe notes that S.C. Code § 23-3-490(D) provides that "[n]othing in [the Act] prohibits a sheriff from disseminating information . . . regarding persons who are required to register . . . if the sheriff or another law enforcement officer has reason to believe the release of this information will deter criminal activity or enhance public safety."

The existence of a deterrent purpose or effect, however, is not dispositive of the double jeopardy question.  *Dep't of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 781 (1994).  "[T]he mere presence of [a deterrent] purpose is insufficient to render a sanction criminal, as deterrence may

serve civil as well as criminal goals." *Hudson v. United States*, 522 U.S. 93, 105 (1997) (citation omitted) (internal quotation marks omitted).

Here, the Sex Registry both deters future criminal activity and serves to promote public safety. For this Court to conclude the Act's "deterrent purpose renders [the Act] 'criminal' for double jeopardy purposes would severely undermine" the state's ability to protect the public. *See id*. ("To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' for double jeopardy purposes would severely undermine the Government's ability to engage in effective regulation of institutions such as banks.").

Consequently, this factor weighs in favor of determining the Act is a civil penalty, too.

> ### d.    *Whether, in its necessary operation, the Act has a rational connection to a nonpunitive purpose*

Doe argues "the Act's declared 'nonpunitive purpose' is to reduce sexual recidivism by providing law enforcement with relevant information about convicted offenders who live within the agency's jurisdiction. S.C. Code § 23-3-400. But the registration and notification requirements in the Act simply do not accomplish this purpose." Doe's Motion at 32.

Both parties appear to agree this claim is subject to rational basis review. Under that standard, "[w]here there are plausible reasons for [the legislature's] action, [the Court's] inquiry is at an end." *F.C.C.*, 508 U.S. at 313-14 (citation omitted) (internal quotation marks omitted) . "The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Id* at 314 (citation omitted) (internal quotation marks omitted).

"On rational-basis review, a classification in a statute . . . comes to us bearing a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it[.]" *Id*. 314-15 (citations omitted)

(internal quotation marks omitted).  "[T]he absence of legislative facts explaining the distinction on the record has no significance in rational-basis analysis."  *Id*. at 315 (citations omitted) (internal quotation marks omitted) (alteration marks omitted).

As the Court already noted, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."  *Id*.  "A State . . . has no obligation to produce evidence to sustain the rationality of a statutory classification."  *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993).

The Court "will uphold a state law that does not draw a suspect classification or restrict a fundamental right against an equal protection or substantive due process challenge if it is rationally related to a legitimate state interest."  *Birchansky v. Clabaugh*, 955 F.3d 751, 757 (8th Cir. 2020).  The Court is "compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends."  *Heller*, 509 U.S. at 321.

Even if the Court accepted the evidence offered by Doe that the Act fails to affect the recidivism rate of those listed on the sex registry, the legislature's statement that "[s]tatistics show that sex offenders often pose a high risk of re-offending[,]" S.C. Code § 23–3–400, satisfies the "rational speculation" requirement.

Additionally, the Supreme Court has opined on the high recidivism rate of sex offenders.  *See e.g., Smith*, 538 U.S. at 103 ("The legislature's findings are consistent with grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class.");  *Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 4 (2003) ("The victims of sex assault are most often juveniles, and when convicted sex offenders reenter society, they are much more likely than any other type of offender to be re-arrested for a new rape or sexual assault.  Connecticut, like every other State, has responded to these facts by enacting a statute designed to protect its communities from sex offenders and to help apprehend repeat sex offenders.") (citation omitted) (internal

quotation marks omitted) (alteration marks omitted)); *McKune v. Lile*, 536 U.S. 24, 33-34 (2002) ("When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." The risk of recidivism posed by sex offenders is "frightening and high.").

Similarly, as recently as 2021, the Fourth Circuit stated, "in the eyes of the legislators who enacted [the Virginia Sex Registry], that [the defendant] has lived 'a model life' since her conviction, supports the conclusion that the registry helps prevent recidivism." *Prynne*, 2021 WL 717054, at *8.

Consequently, the Court is of the firm opinion that, because the Act has a rational connection to a nonpunitive purpose, this factor weighs in favor of the Court determining the Act is a civil penalty, not a criminal one.

The Court notes "[t]he Act's rational connection to a nonpunitive purpose is a most significant factor in [the Court's] determination that the statute's effects are not punitive." *Smith*, 538 U.S. at 102 (citation omitted) (internal quotation marks omitted) (alteration marks omitted).

> ### e.    *Whether, in its necessary operation, the Act is excessive with respect to its nonpunitive purpose*

Doe maintains "the Act here casts an overinclusive net that captures dangerous and docile offenders alike, and then indiscriminately subjects all of them to a lifetime of onerous reporting requirements and unfettered online publication." Doe's Motion at 34. "Furthermore," according to Doe, "the Act's use of publication to accomplish a deterrent purpose, coupled with SLED's irrational publication policy, conclusively demonstrate that the South Carolina Registry Act is only nominally regulatory. Finally, if it remains a close call, [Doe] argues that the tie must be resolved by the Act's utter failure to accomplish any of its putative goals." *Id*.

Beginning with Doe's last argument first, this is not a close call. As provided above, Doe has been unsuccessful in persuading the Court of "the Act's utter failure to accomplish any of its

putative goals." *Id*.  And, his attempt to " demonstrate that the South Carolina Registry Act is only nominally regulatory[,]" *id*., has fared no better.

As to the "over inclusive" arguments, as the *Smith* court held, "[t]he State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not render the Act punitive."  *Smith*, 538 U.S. at 87. And, regarding the other contentions, "[t]he question here is not whether the legislature has made the best choice possible to address the problem it seeks to remedy, but whether the regulatory means chosen are reasonable in light of the nonpunitive objective."  *Id*.  The Act satisfies this standard.. Accordingly, this factor weighs in favor of the Act being a civil penalty, as well.

The Court notes that, in additional support for the proposition the Act is nonpunitive, Defendants cite to the South Carolina Supreme Court's holding that,

> [f]rom th[e] language [in the Act], it is clear the General Assembly did not intend to punish sex offenders, but instead intended to protect the public from those sex offenders who may re-offend and to aid law enforcement in solving sex crimes.  Hence, the language indicates the General Assembly's intention to create a non-punitive act.  We [therefore] find the Act is not so punitive in purpose or effect as to constitute a criminal penalty.

*State v. Walls*, 558 S.E.2d 524, 526 (S.C. 2002).  Doe maintains the Court is not bound by this law. Given the Court's holding above, it will refrain from further commenting on this dispute.

As the Court noted earlier, Doe invites the Court "to neutrally evaluate the Act's purpose and effects instead of applying the 'clearest proof' test."  Doe's Motion at 24-25.  Whichever of the standards the Court employs, however, whether it "neutrally evaluates the Act's purpose and effects," *id*., or it uses the "clearest proof test[,]" *id*., the result is the same: the Act is most certainly a civil, not a criminal, penalty.  Thus, the Court will deny Doe's motion for summary judgment, and grant Defendants' motion, on Doe's Double Jeopardy claim.

**V.    CONCLUSION**

Consequently, based on the foregoing discussion and analysis, it is the judgment of the Court Doe's motion for summary judgment is **DENIED**, and Defendants' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED**.

Signed this 29th day of September, 2023, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE